**Patricia SHEA, Personal Representative for the Estate of Jeannette A. Helling, Deceased, Plaintiff/Appellant,**

v.

**Rollin HELLING, Personal Representative for the Estate of Raymond H. Helling, Deceased, Defendant/Respondent.**

No. 59788.

Missouri Court of Appeals, Eastern District, Division Four.

March 24, 1992.

John Robert O'Connor, Union, for plaintiff/appellant.

John L. Sullivan, Dianne S. Johnson, St. Louis, for defendant/respondent.

AHRENS, Judge.

In this discovery of assets action against Rollin Helling, personal representative for the estate of Raymond H. Helling, plaintiff, Patricia Shea, personal representative for the estate of Jeannette A. Helling, appeals from the trial court's judgment determining the distribution of assets owned by Jeannette Helling and Raymond Helling. We affirm.

Raymond and Jeannette Helling were married in 1963. Each had children from previous marriages, and one child was born of their marriage. On November 29, 1988, Raymond and Jeannette Helling were found dead from gunshot wounds. There was no evidence that decedents died other than simultaneously. Neither decedent had executed a will.

At decedents' deaths, four tracts of land were titled to Raymond Helling; six tracts were titled in the names of both decedents. The trial court found that after decedents' deaths, the Franklin County Sheriff's Department removed approximately 287 firearms from decedents' residence, as well as other items of personal property. Further, the trial court found Mr. Helling apparently acquired twenty-four vehicles and one mobile home "as pledges for loans or outright purchase." The trial court determined that decedents maintained separate bank accounts, savings accounts, and Certificates of Deposit; and that Mr. Helling "utilized his individual bank accounts to purchase the firearms and the vehicles or to make loans...."

Following a hearing, the trial court entered findings of fact, conclusions of law, and a judgment declaring the ownership of and distributing decedents' property. The trial court concluded: (1) there was no evidence decedents died other than simultaneously; (2) "decedents were not engaged in a partnership or joint business venture as to any of the assets in question"; and (3) "resulting trust equitable principles are not applicable to distribution of the decedents' property, as distribution is governed by Chapter 474 RSMo and the rules of intestate succession." The trial court's judgment distributed: individually titled assets to the estate of the title owner, jointly titled assets equally to each estate, the firearms to Mr. Helling's estate, and all household furnishings, clothing, kitchen items, tractors, tools and equipment equally to each estate.

■ Under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), we must affirm the trial court's judgment if it is supported by substantial evidence, not against the weight of the evidence and the court correctly declared and applied the law. *Id.* at 32.

■ In her first point, appellant asserts the trial court erroneously denied appellant's claim to impose an equitable remedy, and "the judgment erroneously declares the law because Missouri public policy and stare decisis vest the circuit court's probate division with equitable jurisdiction."

This court has held that "In equitable actions the probate court has the inherent power to adjust equity between the parties without rigid adherence to any determined form and may shape the remedy to meet the demands of justice." *Estate of Cantonia v. Sindel*, 684 S.W.2d 592, 595 (Mo. App.1985). Contrary to appellant's contention, nothing in the record demonstrates the trial court "misunderstood its jurisdiction" in determining that equitable principles did not apply to the distribution of decedents' property. Rather, it appears that in light of the facts regarding decedents' maintenance of separate bank accounts, individual ownership of some assets, and the absence of a joint business venture or partnership, the trial court determined there was no justification for imposing a resulting trust. Point one is denied.

■ In her second point, appellant alleges the trial court's judgment denying her "claim of a marital or family partnership should be reversed in that the judgment was against the weight of the evidence because shared profits, joint payment of expenses and assumption of liabilities, and

the parties' conduct were prima facie evidence of a marital or family partnership."

Section 358.060.1 RSMo 1986 defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Courts have defined the term as " 'a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions.' " *Brotherton v. Kissinger*, 550 S.W.2d 904, 907 (Mo. App.1977) (quoting *Stuart v. Overland Med. Center*, 510 S.W.2d 494, 497 (Mo.App. 1974)). " 'The contract creating the partnership need not be written, but may be expressed orally or implied from the acts and conduct of the parties.' " *Brotherton*, 550 S.W.2d at 907 (quoting *Stuart*, 510 S.W.2d at 497)). However, "the purported partners must have made a definite and specific agreement proved by cogent, clear and convincing evidence, or at least by a preponderance of the credible evidence[.]" *Brotherton*, 550 S.W.2d at 907.

The trial court's conclusion that decedents were not engaged in a partnership is not against the weight of the evidence. Appellant contends there was *prima facie* evidence of a marital or family partnership, in that decedents: (1) declared shared income on their joint tax returns; (2) shared liabilities to creditors as evidenced by the repeated joint obligations and use of marital assets as security; and (3) accumulated assets free and clear only after the sale of entirety property.

With regard to the declaration of "shared income," we note that § 358.070(4) RSMo 1986 provides: "The receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business ..."; however, "the sharing of profits is not conclusive of the existence of a partnership unless there be a corresponding right of management in each partner." *Brotherton*, 550 S.W.2d at 907. There was no evidence adduced that Mrs. Helling had any right of management in Mr. Helling's business or trading activities with respect to the purchase and sale of guns and automobiles. There was evidence that Mrs. Helling was present during some of Mr. Helling's transactions; her involvement, however, was limited to filing the title and writing the check for Mr. Helling who had previously had his right hand amputated. "[M]erely 'helping out' in a business is not sufficient proof of a partnership." *Id.* Moreover, decedents' tax returns reflected no partnership income from the sale of real estate, firearms, or automobiles. The federal firearms dealer application and license were in Mr. Helling's name.

Appellant asserts decedents had shared liabilities to creditors as evidenced by repeated joint obligations and use of marital assets as security. Appellant does not challenge the trial court's findings that the property on which decedents resided was acquired by Mr. Helling in 1944, had been titled solely in Mr. Helling's name since decedents' marriage in 1963, and was not subject to any deed of trust at decedents' deaths. Appellant has not made the exhibits part of the record on appeal. *See* Rule 81.12. It is apparent from the testimony that during the marriage the residence was used as security to secure various deeds of trust executed by Mr. and Mrs. Helling. There was no evidence, however, as to the source of funds used to discharge those debts. Although decedents purchased and sold other real property jointly, there was no evidence identifying the source of funds used to purchase those properties. Further, there was no evidence that the proceeds from the sale of any real estate was treated as partnership assets.

Appellant asserts there was *prima facie* evidence of the existence of a partnership, because decedents accumulated assets free and clear only after the sale of entirety property. As noted, there was no evidence regarding the source of funds used to purchase the various tracts of real property, or the source of funds used to discharge decedents' debts.

On the record before us, we conclude that the trial court's judgment determining decedents were not engaged in a partnership is not against the weight of the evidence. Point two is denied.

In her third point, appellant contends the trial court erred in applying the law, "because the assets acquired during the Helling marriage were marital or family partnership assets to be distributed to the deceased partners' estates in accordance with the marital contributions."

Appellant asserts decedents' assets were "acquired free and clear" only after the sale of jointly owned real property, and the use of the proceeds from that real property "to discharge the encumbrance against the family home and farm should give rise to a purchase money resulting trust in favor of Jeannette Helling's estate." As noted in our previous discussion, it is apparent the property on which decedents resided had been encumbered with deeds of trust executed by both decedents. There was no evidence, however, regarding the use of proceeds from the loans against that property, or the source of funds used to discharge those debts. If, as appellant argues, proceeds from the sale of jointly owned property were used to discharge those debts against the residence, they discharged debts on which Mrs. Helling was obligated.

There was no evidence regarding the use of proceeds from the loans against decedents' residence, or the source of funds used to discharge any of decedents' debts. Appellant contends that a $10,000 certificate of deposit in the sole name of Mr. Helling was a marital asset in that it "is indisputably traced from entirety proceeds." The only evidence on this issue, however, established that although the funds for the certificate of deposit were derived from a check issued to Mr. and Mrs. Helling, the check was issued to Mr. Helling by his son for payment of a debt owed to Mr. Helling. The trial court did not erroneously apply the law in denying appellant's request to impose a resulting trust on assets titled solely in Mr. Helling's name. Point three is denied.

The trial court's judgment is affirmed.